UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:14-CV-885 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SAMUEL R. BAILEY, et al., | |
| Defendant(s). | |

Presently before the court is counterdefendants Westcor Land Title Insurance Company and Nevada Title Company's motion to dismiss defendant Samuel Bailey's counterclaim. (ECF No. 39). The counterclaimant filed a response to the motion (ECF No. 51), and counterdefendants subsequently replied. (ECF No. 55).

**I.   Background**

Counterclaimant Bailey is the current owner of the residential property located at 4850 Impressario Court, Las Vegas, Nevada 89149 ("the property"). (ECF No. 39 at 6). On or about January 23, 2010, defendant Pete Aguilar owned the property and obtained a loan from plaintiff and counterdefendant Bank of America, N.A. ("BOA") in the amount of $369,459 ("BOA loan"). (*Id.*). Aguilar executed a deed of trust in favor of BOA ("BOA deed of trust") for the property to secure the loan. (*Id.*). BOA did not immediately record the BOA deed of trust. (*Id.*).

On June 25, 2010, Aguilar, acting on behalf of Silver State Steel Group, Inc. ("Silver State")—a company in which Bailey and Aguilar then had an interest—obtained a $500,000 loan from Meadows Bank ("Meadows loan"). (*Id.*).  Aguilar executed a deed of trust for the property in favor of Meadows Bank ("Meadows deed of trust") to secure the loan. (*Id.*). The Meadows deed of trust was recorded on July 1, 2010. (*Id.*).

**James C. Mahan**
**U.S. District Judge**

1      On July 1, 2010, Meadows obtained a title insurance policy ("2010 title policy") from
2  Nevada Title Company ("Nevada Title"). The 2010 title policy was issued by Westcor Land Title
3  Insurance Company ("Westcor") to insure the Meadows loan. (*Id.* at 7). The 2010 title policy did
4  not reveal any deeds of trust encumbering the property, nor did it identify the BOA loan as an
5  exception to the policy or otherwise show that the Meadows loan was inferior to the BOA loan.
6  (*Id.*). The 2010 title policy insured the Meadows deed of trust in the first, superior lien position
7  and obligated Westcor to defend against any potential claims alleging superior position over the
8  Meadows deed of trust. (*Id.*).

9      On or about November 17, 2010, Aguilar refinanced the property and obtained a $397,475
10 loan from Franklin America Mortgage Co. ("Franklin loan"). (*Id.*). Aguilar executed a deed of
11 trust for the property in favor of Franklin America Mortgage Co. ("Franklin deed of trust") to
12 secure the loan. (*Id.*). The Franklin deed of trust was recorded on December 1, 2010. (*Id.*). The
13 Franklin loan was used to satisfy the balance of the BOA loan. (*Id.*).

14     Sometime after the Franklin loan was issued, Meadows Bank refused a request by Franklin
15 to subordinate the Meadows deed of trust to the Franklin deed of trust. (*Id.*). Franklin took no
16 further action to assert that its deed of trust was superior to the Meadows deed of trust. (*Id.*).

17     On October 21, 2011, BOA recorded its deed of trust against the property, despite the BOA
18 loan having been satisfied by the Franklin loan. (*Id.*). At this time, neither BOA nor Franklin took
19 any action to challenge the superiority of the Meadows deed of trust. (*Id.* at 7–8). BOA claims that
20 on or about December 13, 2012, Franklin assigned the Franklin deed of trust to BOA and that
21 assignment was recorded with Clark County on December 13, 2012. (*Id.* at 8). After the
22 assignment, BOA took no action to challenge Meadows or the asserted superiority of the Meadows
23 deed of trust. (*Id.*).

24     On June 6, 2013, Meadows Bank assigned the Meadows deed of trust to Bailey
25 ("Meadows-Bailey assignment"). (*Id.*). Bailey was allegedly not aware of any dispute regarding
26 the relative positions of the Meadows deed of trust, the BOA deed of trust, or the Franklin deed of
27 trust at the time of the Meadows-Bailey assignment. (*Id.*). Bailey relied upon the perceived
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

superior position of the Meadows deed of trust when he agreed to purchase the Meadows loan, which was secured by the Meadows deed of trust. (*Id.*).

After the Meadows loan went into default, Bailey took action to enforce his rights. (*Id.*). On September 3, 2013, Bailey recorded a notice of default and election to sell and provided notice to BOA pursuant to NRS 107.090; BOA took no action in response. (*Id.*). On May 14, 2014, Bailey recorded a notice of trustee's sale and provided notice to BOA. (*Id.*). On June 6, 2014, BOA commenced action for declaratory relief and recorded a notice of pendency of action affecting title to real property against the property. (*Id.*). BOA took no further action to stop the foreclosure on the property. (*Id.*). As a result, the property was foreclosed, and Bailey acquired the property through a foreclosure sale and trustee's deed was recorded on September 9, 2014. (*Id.* at 8–9).

After BOA commenced its action, Bailey made a claim to counterdefendant Westcor for indemnification and defense of BOA's claims, as they challenged the priority position of the Meadows deed of trust. (*Id.* at 9). Westcor denied the claim for indemnification. (*Id.*).

Bailey discovered that instead of treating the transaction between Meadows and Bailey as an assignment, endorsing or assigning the 2010 title policy, or providing similar coverage, Nevada Title and Westcor provided a new and inferior title policy on June 6, 2013 ("2013 title policy"). (*Id.*). This policy downgraded Bailey's insurance coverage and Westcor's obligations to Bailey, and reduced Bailey's rights under the Meadows-Bailey assignment. (*Id.*). Counterdefendants attempted to include the BOA deed of trust and Franklin deed of trust as exceptions to coverage by listing them in Schedule B of the 2013 title policy ("exceptions from coverage"). (*Id.*).

Bailey alleges that, among other things: (1) Westcor and Nevada Title breached the implied covenant of good faith and fair dealing arising from either the 2010 or the 2013 title policies; (2) Westcor and Nevada Title breached a fiduciary duty that they owed to Bailey; (3) Westcor and Nevada Title acted negligently in breaching this duty, causing Bailey's damages; and (4) Westcor and Nevada Title intentionally disrupted the contractual relationship between Bailey and Meadows. (*Id.* at 13–18).

Plaintiff BOA filed a complaint against defendants Bailey and Aguilar for a declaratory judgment, alleging that the Meadows deed of trust held by Bailey should be subordinate and

**James C. Mahan**
**U.S. District Judge**

subject to the Franklin deed of trust held by BOA. (ECF No. 1 at 5). BOA further alleges that any estate, right, title, or other interest that Bailey may hold in the property remains subordinate and subject to the Franklin deed of trust. (*Id.*).

Bailey filed an answer and counterclaims against BOA for offset, unjust enrichment, and slander of title. (ECF No. 39). Bailey also filed counterclaims against Westcor and Nevada Title for indemnity, breach of contract, breach of implied covenant of good faith and fair dealing, tortious breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, fraud, interference with contractual relations, and attorney's fees. (ECF No. 39).

Counterdefendants Westcor and Nevada Title then filed the present motion to dismiss counts seven, eight, eleven, twelve, and fourteen of Bailey's counterclaim. (ECF No. 46). Counterclaimant Bailey filed a response (ECF No. 51) and counterdefendants filed a reply. (ECF No. 55).

**II.     Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. At 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitations of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially

James C. Mahan
U.S. District Judge

- 4 -

plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

Counterdefendants Westcor and Nevada Title argue that Bailey's tort claims are barred by the economic loss doctrine. They also argue that Bailey's claim for professional negligence fails as a matter of law because Bailey has not alleged sufficient facts to support the claim. Finally, they argue that the interference with contractual relations claim fails because Bailey has not sufficiently alleged their intent to disrupt the Meadows-Bailey assignment.

A) *Economic loss doctrine*

Westcor and Nevada Title argue that the economic loss doctrine bars Bailey's recovery in tort for counterdefendants' alleged breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, and interference with contractual relations. (ECF No. 46 at 8). They assert that Bailey has not alleged any facts which might give rise to the several exceptions to the doctrine. (*Id.*).

Bailey argues that Westcor and Nevada Title are "real estate professionals," and that claims against such parties are expressly recognized within the limited exceptions to the economic loss

James C. Mahan
U.S. District Judge

- 5 -

doctrine under Nevada state law. (ECF No. 51 at 8). Bailey further argues that the economic loss doctrine is inapplicable to these claims because the doctrine does not reach his intentional tort claims against Westcor and Nevada Title. (*Id.* at 6).

The judicially created economic loss doctrine, which emanates from products liability jurisprudence, "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Calloway v. City of Reno*, 116 Nev. 250, 256–57 (2000) superseded by statute, as stated in *Olson v. Richard*, 120 Nev. 240, 241–44 (2004) (quoting Sidney R. Barret, Jr. Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C. L.Rev. 891, 894–95 (1989)).

The economic loss doctrine bars a plaintiff from recovering "purely economic losses" as a result of an unintentional tort. *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 73 (2009) (citing *Local Joint Exec. Bd. v. Stern*, 98 Nev. 409, 411 (1982)). Thus, the economic loss doctrine prevents a plaintiff from asserting contract claims "cloaked in the language of a tort." *Giles v. General Motors*, 494 F.3d 865, 872 (9th Cir. 2007). *Cf. Blotzke v. Christmas Tree, Inc.*, 88 Nev. 449 (1972). The economic loss doctrine further bars breach of fiduciary duty claims premised on a contractual relationship. *See G.K. Las Vegas Limited P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1222, 1242 (D. Nev. 2006).

"While the doctrine generally provides that purely economic losses are not recoverable in tort absent personal injury or property damage, courts have made exceptions to allow such recovery in certain categories of cases, such as negligent misrepresentation and professional negligence actions against . . . real estate professionals and insurance brokers." *Terracon*, 125 Nev. at 75. Additionally, while the doctrine bars unintentional tort claims, "purely economic losses are recoverable in actions for tortious interference with contractual relations . . . when the alleged interference is intentional." *Id.* at 73 (emphasis omitted).

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

1) *Counts seven, eight, eleven, and fourteen: tortious breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and interference with contractual relations*

Bailey alleges in counts seven and eight that Westcor and Nevada Title breached the implied covenant of good faith and fair dealing arising from the 2010 and 2013 title policies, respectively. (ECF No. 39 at 13–14). In count eleven, Bailey alleges that Westcor and Nevada Title breached their fiduciary duties to Bailey. (ECF No. 39 at 15–16). Finally, in count fourteen, Bailey alleges that Westcor and Nevada Title disrupted the contractual relationship between Bailey and Meadows. (*Id.* at 17). Under each of the above claims, Bailey alleges that Westcor and Nevada Title intentionally misled him with respect to the amount of coverage provided to him pursuant to the 2010 and 2013 title policies. (ECF No. 51 at 6).

The economic loss doctrine does not bar intentional tort claims. *See Terracon*, 125 Nev. at 73. Therefore, the doctrine does not bar Bailey's claims for tortious breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and interference with contractual relations.

2) *Count twelve: negligence*

The unintentional tort of negligence falls within the scope of the economic loss doctrine. Bailey argues that Westcor and Nevada Title, as "insurance brokers," are excepted professionals under the doctrine. (ECF No. 51 at 8). Westcor and Nevada Title argue that they are "escrow agents"—a type of professional which this court has found does not fall within an exception to the doctrine.[1] (ECF No. 55 at 4). *See First Magnus Fin. Corp. v. Rondeau*, No. 2:07-CV-132- JCM (PAL), 2012 U.S. Dist. LEXIS 23549 (D. Nev. February 24, 2012).

Generally, "the legal distinction between an 'agent' and a 'broker' is that an 'agent' transacts insurance as *the agent of the insurer* and a 'broker' transacts insurance as the *agent of the insured* with regard to a particular insurance transaction." *United States v. Renzi*, 769 F.3d 731,

---

[1] While the court acknowledges that Westcor and Nevada Title may perform escrow services, being an escrow agent and an insurance broker are not mutually exclusive roles. Indeed, many title companies perform both services, and the allegations in the complaint indicate that Nevada Title played a role in issuing a Westcor insurance policy on behalf of either Meadows, as a broker, or Westcor, as an agent.

759 (9th Cir. 2014) (quoting 2 Jeffrey E. Thomas *New Appleman on Insurance Law Library Edition* § 1502[1][a] (LexisNexis 2009) (emphasis in original)).

The allegations in Bailey's counterclaim plausibly support that Nevada Title is an insurance broker. As Bailey states in his counterclaim, "[o]n July 1, 2010, Meadows *obtained from* Nevada Title a title insurance policy issued by Westcor Land Title Insurance Company ("2010 Title Policy") to insure the Meadows Loan." (*Id.*) (emphasis added). The facts alleged in Bailey's counterclaim suggest that Meadows Bank approached Nevada Title to obtain insurance for its deed of trust on the property. If this is true, Nevada Title then acted as an agent of the insured with respect to this transaction, securing the 2010 title policy from Westcor. *See Renzi*, 769 F.3d at 759. Because Bailey's allegations support a plausible inference that Nevada Title acted as an insurance broker, he has properly alleged Nevada Title is an excepted professional under the economic loss doctrine. Therefore, the economic loss doctrine does not bar Bailey's negligence claim against Nevada Title.

The court further finds that Westcor is not an insurance broker under the economic loss doctrine. After BOA commenced its action, "Bailey made a claim to Westcor for indemnification and defense of BOA's claims. . ." (*Id.* at 9). This allegation supports a plausible inference that Westcor is an insurer. Insurers are not excepted professionals under the economic loss doctrine. Therefore, because Westcor is not an excepted professional under the economic loss doctrine, Bailey's negligence claim is barred by the economic loss doctrine against Westcor only, and is dismissed with respect to Westcor only.

   *3) Count fourteen: interference with contractual relations*

Having found that the economic loss doctrine does not bar Bailey's claim for interference with contractual relations against Westcor and Nevada Title, the court will turn to counterdefendants' alternative argument against the merits of Bailey's claim. Bailey argues that Westcor and Nevada Title intentionally interfered with the Meadows-Bailey assignment by reducing Westcor's obligations to Bailey from the 2010 title policy to the 2013 title policy. (ECF No. 39 at 10). Bailey further argues that these reduced obligations have led to Westcor and Nevada Title's refusal to indemnify Bailey against BOA's lawsuit. (*Id.* at 12). Westcor and Nevada Title

James C. Mahan
U.S. District Judge

- 8 -

argue that Bailey has not "presented sufficient evidence" [2] to support his conclusory allegations that Westcor or Nevada Title intentionally did anything to disrupt the Meadows-Bailey assignment. (ECF No. 55 at 7).

The Nevada Supreme Court defined the elements of an action for intentional interference with contractual relations as follows:

> (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.

*J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003).

Bailey has indicated in his counterclaim that (1) a valid and existing contract, the Meadows-Bailey assignment, existed between Bailey and Meadows; (2) Westcor and Nevada Title knew of the existence of the Meadows-Bailey assignment; (3) Westcor and Nevada Title intentionally misled Bailey about the reduction in Westcor's obligations from the 2010 title policy, thus reducing Bailey's rights under the assignment; and (4) as a result of this reduction of rights, (5) Bailey has suffered damages resulting from BOA's lawsuit. (ECF No. 39 at 10, 12, 17).

The specificity defendants desire goes far beyond the "short and plain statement of the claim" required by FRCP 8(a)(2). The court finds that these statements sufficiently plead an interference with contractual relations claim under *Twombly* and *Iqbal*.

. . .
. . .
. . .
. . .
. . .
. . .
. . .

---

[2] Westcor and Nevada Title's argument that Bailey has not provided sufficient evidence is inapposite at the motion to dismiss stage of litigation. Instead, the court will evaluate "whether the factual allegations in the complaint allege a plausible claim for relief." *Iqbal*, 129 S.Ct. At 1950.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Westcor Land Title Insurance Company and Nevada Title Company's motion to dismiss (ECF No. 46) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Samuel Bailey's counterclaim for negligence (count 12) (ECF No. 39) be, and the same hereby is, DISMISSED with respect to defendant Westcor only.

DATE June 15, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**