UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:14-CV-885 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SAMUEL R. BAILEY, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment. (ECF No. 68). Defendant Samuel Bailey has filed a response (ECF No. 71), and plaintiff has filed a reply (ECF No. 73).

Also before the court is the defendant's motion for summary judgment. (ECF No. 70). Plaintiff filed a response (ECF No. 72), and defendant filed a reply (ECF No. 75).

**I.     Introduction**

Plaintiff initiated the present action, requesting declaratory relief and quiet title as to its alleged first-position security interest in the real property at 4850 Impressario Court, Las Vegas, Nevada (the "property"). (ECF No. 1).

Bailey then filed the following counterclaims against BANA: (1) an offset to BANA's potential damages due to costs incurred by acquiring the property; (2) unjust enrichment; (3) slander of title; and (4) attorneys' fees as special damages. (ECF No. 39).

According to BANA, dismissed co-defendant Peter Aguilar owned the property, refinancing it with a roughly $400,000.00 loan from Countrywide Bank, FSB ("Countrywide") on December 17, 2008. (ECF No. 68). This transaction was secured by a deed of trust for Countrywide that was recorded on the same day. (*Id.*).

On January 23, 2010, Aguilar then refinanced the property by means of a $396,459.00 loan from BANA, which satisfied the outstanding Countrywide loan. (*Id.*). As a result, a February 2, 2010, substitution of trustee and reconveyance was recorded. (*Id.*).

Plaintiff asserts that a first deed of trust on the property secured the BANA loan. (*Id.*). Importantly, plaintiff indicates that the deed of trust was executed by Aguilar on January 23, 2010, but it was not recorded until October 21, 2011. (*Id.*).

In the meantime, Aguilar and Bailey allegedly acted as principals of Silver State Steel Group, Inc. in the course of that entity's acquisition of a Small Business Administration ("SBA") loan from Meadows Bank ("Meadows"). (ECF No. 70).

Plaintiff informs the court that "Aguilar and Bailey additionally each personally guaranteed the SBA Loan. As additional collateral for the SBA Loan, Aguilar granted Meadows a second-position Deed of Trust . . . on the Property, which was recorded on July 1, 2010." (ECF No. 68 at 4) (citations omitted). Plaintiff alleges that Bailey and Meadows had actual knowledge of the BANA loan and unrecorded deed of trust. (*Id.*).

Next, Aguilar received a loan from Franklin America Mortgage Company ("Franklin"). (*Id.*). That "[l]oan was secured by a First Deed of Trust recorded against the Property on December 1, 2010." (*Id.* at 5). This loan was "used to fully satisfy the outstanding balance owed on the B[ANA] Deed." (*Id.*).

On December 13, 2012, Franklin assigned its deed of trust to BANA. (*Id.*). Thereafter, "Bailey . . . acquired an assignment of Meadows' right, title, and interest on June 6, 2013." (ECF No. 71 at 6).

On September 3, 2013, defendant Bailey recorded a notice of default and election to sell. (*Id.*). On May 14, 2014, defendant recorded a notice of sale. (*Id.*). Plaintiff initiated the instant action on June 6, 2014, requesting a declaratory judgment that its security interest in the property, stemming from the Franklin deed of trust, "is superior to and holds priority over the Meadows Deed of Trust." (ECF No. 1 at 4). Finally, "Bailey acquired a Trustee's Sale Deed to the Property on September 9, 2014." (ECF No. 70 at 5).

**James C. Mahan**
**U.S. District Judge**

Ultimately, plaintiff requests that the court rule in its favor as to two questions: (1) "Was the B[ANA] Deed of Trust in a position of priority to the Meadows Deed of Trust?"; and (2) "Was the Franklin Deed of Trust equitably subrogated to the position of the BOA Deed of Trust?" (ECF No. 68 at 8).

Regarding the first question, BANA argues that the BOA deed of trust was in a priority position to the Meadows deed of trust because Meadows and Bailey had actual knowledge of BANA's loan and underlying position in the property. (*Id.*). As to the second question, BANA argues "that a refinancing mortgagee expects to receive equal priority to the mortgage being discharged" and "that the proceeds of the Franklin mortgage went to fully satisfy the B[ANA] mortgage, that Franklin did not intend[] to subordinate its interest to Meadows, and that Meadows was not prejudiced." (*Id.* at 12).

In the alternative, BANA requests that the court should grant summary judgment in its favor against Bailey's offset counterclaim because he received the benefit of the Meadows note and because BANA accuses Bailey of seeking damages for an issue outside of the scope of the instant litigation. (*Id.* at 16–17) ("Bailey's damage calculation similarly includes attorneys' fees incurred in wholly unrelated litigation against [his co-defendant,] Aguilar.").

Finally, BANA also seeks relief from this court against Bailey's counterclaims of unjust enrichment, slander of title, and attorneys' fees. (*Id.*).

Bailey's motion for summary judgment asks that this court adjudicate plaintiff's claims and Bailey's third counterclaim, slander of title, in his favor. (ECF No. 70). Bailey asserts two central points. (*Id.*). First, Bailey argues that "[BANA] cannot invoke equity to create a lien that does not exist," due to BANA's failure to record its deed of trust. (*Id.* at 2). Next, Bailey contests that "there is no justification for recording an extinguished deed of trust." (*Id.* at 3).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate

**James C. Mahan**
**U.S. District Judge**

- 3 -

and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III. Discussion**

　　a. *Declaratory relief/quiet title*

　　　　i. *Priority of interests*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

"Nevada is a race notice state." *Buhecker v. R.B. Petersen & Sons Const. Co.*, 929 P.2d 937, 939 (Nev. 1996) (citing Nevada Revised Statutes ("NRS") §§ 111.320 and 111.325). What this means is that "a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first."[1] *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, 184 F. Supp. 3d 853, 860 (D. Nev. 2016).

---

[1] NRS 111.325 provides as follows:

　　Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.

There is no dispute that BANA failed to record its initial deed of trust before Meadows Bank recorded its own deed of trust on the property. (ECF No. 70). Similarly, it is clear that Meadows also recorded its interest in the property before Franklin recorded its own. (*Id.*).

However, at the time they applied for the small business loan, Aguilar and Bailey were aware of BANA's lien on the property.[2] (ECF No. 68-4 at 12). Moreover, Meadows also had notice of BANA's interest on the property, evinced by the SBA authorization document that Mark Petit signed on behalf of Meadows. (ECF No. 68-5). Additionally, Meadows' conditional commitment letter also indicates that bank's acknowledgement of BANA's position in the property. (ECF No. 68-6).

Because Meadows had knowledge of BANA's unrecorded interest, Meadows' act of recording its own interest did not give its deed of trust priority over BANA's lien.[3] *See* Nev. Rev. Stat. § 111.325.

### ii. Equitable subrogation

"Equitable subrogation permits a person who pays off an encumbrance to assume the *same priority position* as the holder of the previous encumbrance." *Recontrust Co. v. Zhang*, 317 P.3d 814, 817 (2014) (emphasis added) (internal quotation marks omitted). "The practical effect of equitable subrogation is a revival of the discharged lien and underlying obligation and assignment to the payor or subrogee, permitting the subrogee to enforce the seniority of the satisfied lien against junior lienors." *In re Fontainebleau Las Vegas Holdings*, 289 P.3d 1199, 1209 (Nev. 2012) (quoting *American Sterling Bank v. Johnny Mgmt. LV, Inc.*, 245 P.3d 535, 539 (Nev. 2010)).

To be entitled to a preceding interest's priority, the payor must "(1) reasonably expect[] to receive a security interest in the real estate with the priority of the mortgage being discharged, and

---

[2] The court notes BANA's argument that the January 23, 2010, execution on the original BANA deed of trust preceded the 2011 amendment to NRS 106.210; therefore, the act of recording was not mandatory to create a property interest at the relevant time. *See* Nev. Rev. Stat. § 106.210 (pre-2011 amendment); *see also Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 n.5 (Nev. 2012); (ECF No. 68).

[3] Despite defendant's arguments, BANA's original deed of trust was an interest in the property, just not an unassailable one. *See* Nev. Rev. Stat. § 111.325; *see also* (ECF No. 70).

[(2)] subrogation [does] not materially prejudice the holders of intervening interests in the real estate." *Id.* (internal quotation marks omitted).

Franklin's interest in the property was recorded subsequent to Meadow's own act of recording, but the proceeds from Franklin's loan satisfied BANA's outstanding mortgage on the property. (ECF No. 68-8). Later, Franklin assigned its deed of trust to BANA, and that transaction was recorded on December 13, 2012. (*Id.*).

Therefore, if equitable subrogation applies to the Franklin loan's satisfaction of the original BANA deed of trust, then BANA's later-acquired deed of trust would be superior to Bailey's interest in the property.

Plaintiff offers the affidavit of Jacqueline Volpe, who works for Franklin in the capacity of vice president of loss mitigation. (ECF No. 68-8). She avers that "[a]t the time the Franklin Mortgage closed and the Deed of Trust securing the same was executed and recorded, Franklin expected to receive equal priority to the Bank of America Deed of Trust when it satisfied Bank of America's interest in the subject property."[4] (*Id.* at 3).

However, Bailey points out that, before the assignment to BANA, Franklin or BANA obtained an October 2010 title report that identified the Meadows deed of trust, without any qualification such as "second" or "junior," as "secur[ing] an original indebtedness of $500,000.00." (ECF No. 70-14 at 5); *see also* (ECF No. 70).

Additionally, Ms. Volpe's affidavit does not address the reasonability of Franklin's subrogation expectation. (ECF No. 68-8). Instead, it evinces dependence on an apparently deficient "Uniform Residential Loan Application"—which lacked mention of the Meadows interest—without testimony as to how reliance on the mere application was appropriate for that loan issuance or for an expectation to assume BANA's priority. (*Id.* at 2).

Thus, a genuine issue of fact exists as to whether Franklin's expectation of a security interest at the time of the discharge of the original BANA deed of trust, in light of the information

---

[4] It does not appear that BANA is a "volunteer." *See Mort v. United States*, 86 F.3d 890, 894 (9th Cir. 1996).

characterizing the various interests in the property, was reasonable. *In re Fontainebleau Las Vegas Holdings*, 289 P.3d at 1209; *see also Tel. RD Trust v. Bank of Am., N.A.*, 383 P.3d 754 (Nev. 2016).

  b. *Offset*

  BANA next requests summary judgment as to Bailey's counterclaim for an offset of the latter's expenses. Because there is a genuine issue of material fact regarding whether BANA's interest may be subject to equitable subrogation, there also remains a genuine issue of material fact regarding Bailey's entitlement to compensation for the improvement and security of his rights in the property because the priority relationship between the parties' interests in the property is currently unknown.

  c. *Unjust enrichment*

  "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)) (internal quotation marks omitted).

  BANA argues that Bailey's unjust enrichment claim fails because he is the only party who benefits from his efforts that added value to the property and because Bailey has not shown that it would be unjust for BANA to enjoy that benefit. (ECF No. 68). Furthermore, BANA contests that Bailey is subject to the unclean hands doctrine because he signed the Meadows loan documents that showed the BANA deed of trust's existence. (*Id.*).

  Bailey's response discusses the expenses involved in his acquisition of property title and alleges that BANA surreptitiously "conceal[ed]" its interest in the property. (ECF No. 71 at 24).

  "The application of the unclean hands doctrine raises primarily a question of fact." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). To preclude equitable relief, the party's inequitable conduct must be "unconscientious, unjust, or marked by the want of good faith" and sufficiently connected with the "subject-matter or transaction in litigation." *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 766 (Nev.

James C. Mahan
U.S. District Judge

- 8 -

2008) (citing *Income Investors v. Shelton*, 101 P.2d 973, 974 (Wash. 1940)). Two factors must be considered when assessing if a party's conduct is sufficiently connected to the action: "(1) the egregiousness of the misconduct at issue, and (2) the seriousness of the harm caused by the misconduct." *Id.*

Presently, this court cannot assess the two prongs of the unclean hands analysis because measuring the "egregiousness" of Bailey's alleged misconduct and the "seriousness" of BANA's asserted injury illustrates the importance of measuring the relative magnitude of harm between parties when considering equity. *See id.* Here, the equitable subrogation issue remains unresolved, so the *excessiveness* of the alleged injury is unknown because the baseline *harm* is also unknown at this time due to the lack of clarity regarding BANA's present interest in the property. Thus, summary judgment will be denied as to this claim.

    *d. Slander of title*

"The requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken." *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983). "In order to prove malice it must be shown that the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity." *Id.*

Bailey bases this claim on BANA's October 21, 2011, recording of the deed of trust. (ECF No. 39). BANA's motion suggests that Servicelink, which is a settlement agent, was the entity that recorded the deed. (ECF No. 68). Additionally, BANA argues that it has no knowledge of communication to Servicelink instructing it to record the deed of trust. (*Id.*); *see also* (ECF No. 68-17).

That motion also avers that the balance for the initial BANA deed of trust was satisfied by November 2010 Franklin loan. (*Id.*). BANA's later reentry into the chain of title with Franklin's assignment of rights and interest in the Franklin deed of trust occurred in December 2012. (*Id.*). Therefore, BANA owned no interest in the property at the time it recorded its initial deed of trust.

However, the Nevada Supreme Court has stated as follows regarding slander of title:

> The damage . . . must be shown to have been the direct and natural result of the utterances made by the defendant, and . . . he cannot be held liable for the repetition

of those words or utterances by others, unless it be shown that the repetition was by the direction or authority of the party originating the same.

*Potosi Zinc Co. v. Mahoney*, 135 P. 1078, 1082 (Nev. 1913).

Although BANA has offered evidence that it neither recorded the deed of trust nor requested that the same be recorded, Bailey has similarly provided evidence that BANA was aware of the improper recording and did not correct it. (ECF No. 71). This assertion suggests that defendant/counterclaimant also pursues liability for this claim based upon a theory of ratification. *See Harrah v. Specialty Shops*, 221 P.2d 398, 399 (Nev. 1950). Indeed, defendant asserts that Servicelink was acting as BOA's agent. (ECF No. 71).

However, BANA denies that Servicelink acted as its agent. (ECF No. 73). Furthermore, defendant's opposition has failed to sufficiently present evidence showing that Servicelink was acting as BANA's agent at the time the deed of trust was recorded. (ECF No. 71); *see also* (ECF No. 71-32). Therefore, this court must grant summary judgment in favor of BANA as to Bailey's slander of title claim for defendant's failure to establish a genuine issue of material fact regarding BANA's involvement with Servicelink's actions. *See Celotex Corp.*, 477 U.S. at 323–24.

e. *Attorneys' fees*

BANA moves also for summary judgment against Bailey's counterclaim for attorneys' fees as special damages. (ECF No. 68). This counterclaim is based upon the allegation that "Bailey's title to the Property has been clouded by the actions of the defendants as alleged herein." (ECF No. 39 at 18). Notably, Bailey's other counterclaims against BANA were asserted in connection with BANA's assertion of an interest in the property. (*Id.*).

The Nevada Supreme Court has stated "that a party who brought an action to clarify or remove a cloud on title must prove slander of title in order to recover the attorney fees that he or she incurred in the action." *Liu v. Christopher Homes, LLC*, 321 P.3d 875, 880 (Nev. 2014) (clarifying the boundary of the Nevada Supreme Court's ruling in *Horgan v. Felton*, 170 P.3d 982, 984 (Nev. 2007)).

Because summary judgment will be granted in BANA's favor as to Bailey's claim for slander of title, case law requires the same result regarding Bailey's claim for attorneys' fees as special damages. *See* (*id.*).

### IV. Conclusion

In sum, Meadows act of recording its interest in the property did not give its deed of trust priority over BANA's original interest, but there is a genuine dispute of material fact regarding the reasonability of Franklin's expectation of a first-priority security interest at the time of the satisfaction of the original BANA deed of trust. This lack of clarity as to equitable subrogation causes parallel genuine disputes of material fact as to the offset and unjust enrichment counterclaims.

However, summary judgment will be granted in BANA's favor for the slander of title and attorneys' fees counterclaims.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that BANA's motion for summary judgment (ECF No. 68) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that: (1) Meadows' recording of its interest in the property did not give its deed of trust priority over BANA's original deed of trust; (2) there is a genuine dispute of material fact as to whether equitable subrogation can apply; (3) there is a genuine dispute of material fact as to the offset and unjust enrichment counterclaims; and (4) BANA's motion for summary judgment is granted as to Bailey's counterclaims of slander of title and attorneys' fees.

IT IS FURTHER ORDERED that Bailey's motion for summary judgment (ECF No. 70) be, and the same hereby is, DENIED.

DATE May 26, 2017.

_____
UNITED STATES DISTRICT JUDGE